Anthony J. Fernandez (Bar No. 018342)
Sydney D. Goodhand (Bar No. 032512)
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
8800 E. Raintree Dr., Suite 100
Scottsdale, Arizona  85260
Telephone:  (602) 954-5605
Facsimile:  (602) 954-5606
afernandez@qpwblaw.com
sydney.goodhand@qpwblaw.com
*Attorneys for Defendants Corizon Health, Inc.,*
*Christopher Johnson, DO, Cindy Walton-Sparks,*
*Kimberly Brinton, and Claudine Kabongo*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan M. Arther,<br><br>                Plaintiff,<br><br>   v.<br><br>Corizon Health, Inc., a private entity; Dr. Heller, an individual; Eye Doctors of Arizona, PLLC; Former Arizona Department of Corrections Director Charles Ryan, Acting Arizona Department of Corrections Director David Shinn; Arizona Department of Corrections Officers John (or Jane) Does 1, 2, 4, 5, 7, 8, and 10; Arizona Department of Corrections IFF Liaison John (or Jane) Doe 9; Arizona Department of Corrections Officer john Doe – Ferman; Arizona Department of Corrections Officer John Doe – Stevens; Nurse and Health Provider John (or Jane) Doe 3; Nurse and Health Provider John (or Jane) Doe 5.<br><br>                Defendants. | **CASE NO. CV-20-00189-PHX-JAT (JFM)**<br><br><br>**DEFENDANTS CHRISTOPHER JOHNSON, DO, CINDY WALTON-SPARKS, KIMBERLY BRINTON, CLAUDINE KABONGO, AND STATE OF ARIZONA'S RESPONSE TO DEFENDANT CORIZON HEALTH, INC.'S SUGGESTION OF BANKRUPTCY AND NOTICE OF AUTOMATIC STAY** |

Defendants Christopher Johnson, DO, Cindy Walton-Sparks, Kimberly Brinton, Claudine Kabongo, and State of Arizona ("Defendants" herein), by and through undersigned counsel, hereby respond to this Court's Order at Dkt. 159 regarding Defendant Corizon's Suggestion of Bankruptcy and Notice of Automatic Stay and whether the stay should apply to the remaining Defendants in this matter. In short, the instant case should be stayed as to Defendants herein for the practical and equitable reasons explained herein.

The request is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

#### A.  The Claims and Parties

State of Arizona is a named defendant in this matter. In a written agreement with the State of Arizona, Debtor Corizon agreed to indemnify, defend, save and hold harmless the State, its and its officers, officials, agents, and employees from and against any and all claims, actions, liabilities, damages, losses, or expenses, including attorney's fees and costs, for bodily injury or personal injury or loss to tangible property that is alleged or caused, in whole or in part, by the negligent or willful acts or omissions of Corizon and its employees and agents.

Christopher Johnson, DO, Cindy Walton-Sparks, Kimberly Brinton, and Claudine Kabongo are named defendants in this matter. They are each former employees of Debtor Corizon Health, Inc. Corizon has hired and paid undersigned defense counsel (with the former employees' notice and consent) to represent each in this case due to their former employment history and the fact that the allegations against them arose out of their employment with Corizon.

#### B.  Relevant Bankruptcy History

Corizon filed for bankruptcy on February 13, 2023. [*See* Dkt. 158.] Defendant Corizon hired separate out-of-state bankruptcy counsel that is handling Corizon's bankruptcy. Recognizing that the automatic stay does not necessarily extend to non-debtor defendants, Corizon's bankruptcy counsel filed briefings in the United States Bankruptcy

1  Court in the Southern District of Texas, Houston Division (the "Bankruptcy Court") on
2  February 17, 2023, requesting an extension of the automatic stay to cover pending and open
3  litigation against non-debtor defendants, including individual providers such as the non-
4  debtor Defendants herein. [*See* Debtor's Emergency Motion to Extend and Enforce the
5  Automatic Stay ("Stay Motion"), attached hereto as **Exhibit A**.]

6        A hearing on the Stay Motion took place on Friday, March 3, 2023, at 1:00 pm Central
7  Time (the "Hearing"). The court did not definitively rule on the Stay Motion. Instead, the
8  Bankruptcy Court temporarily stayed a list of certain cases until May 17, 2023 when the
9  Court is expected to make a definitive ruling on the Stay Motion at that time. Some of the
10  cases were also stayed as to select individual, indemnified defendants. [*See* Order, attached
11  hereto as **Exhibit B** at Exhibit 1.]

12  **II.    LEGAL ARGUMENTS**

13        The instant case as to Defendants herein should be stayed consistent with the
14  Bankruptcy Court's Order as with Corizon and other indemnified defendants. As previously
15  explained, throughout the Stay Motion, Debtor sought to extend the stay "to protect co-
16  defendants holding an indemnity right against the Debtor, while the debtor formulates and
17  consummates a plan of liquidation" [*See* Exhibit A at ¶ 3.] Corizon claimed the stay is
18  necessary to protect it from indemnity claims while it proceeds through Chapter 11 and
19  formulates an exit strategy [Exhibit A at ¶ 5.]

20        In addition to the Debtor, in many lawsuits, claims are asserted against other parties
21  to whom the Debtor owes indemnification obligations: (a) non-debtor former clients and/or
22  their employees (collectively, the "Indemnified Clients"); (b) former officers and directors
23  (collectively, the "Indemnified D&Os"); and (c) non-debtor affiliates, CHS and YesCare
24  Corp. (collectively, the "Non-Debtor Affiliates," and together with the Indemnified D&Os
25  and the Indemnified Clients, the "Non-Debtor Indemnified Parties") [Exhibit A at ¶ 6.]

26        The Lawsuits generally fall into four categories: (a) vendor lawsuits, typically
27  asserting breach of contract claims against the Debtor and certain Indemnified Clients for
28  unpaid invoices; (b) professional liability lawsuits, typically asserting medical malpractice

and related claims against the Debtor, certain Indemnified Clients, certain Indemnified D&Os, and individual former employee medical providers; (c) employment lawsuits, asserting employment discrimination or similar claims against the Debtor, certain Indemnified D&Os, and certain Indemnified Clients; and (d) workers' compensation lawsuits against the Debtor only. [Exhibit A at ¶ 7.]

The arguments raised in the Stay Motion are applicable in the instant case and the Bankruptcy Court may ultimately rule that a stay is warranted as to Defendants herein when it rules on the Stay Motion in May. The instant case against each of the individual defendants herein is regarding medical care and their relation to Corizon. Corizon has paid for the defense of Defendants herein in this matter and Corizon has a written agreement indemnifying the State of Arizona. Moreover, any claim or final resolution against Defendants herein may result in indemnification liability for the Debtor and indemnification claims asserted against the Debtor in the Bankruptcy Case. The assets of the debtor would arguably be used to satisfy any indemnity claims against it. In turn, litigating these indemnity claims against the Debtor would lessen any remaining assets available to Debtor's other creditors.

Aside from that, by proceeding with the claims against Defendants herein, Corizon would not be able to properly participate in this matter. For example, the Defendants' Motion for Summary Judgment in the instant matter is fully briefed and awaiting decision. If the stay does not apply to Defendants herein and the Motion is ruled upon as to these five defendants while the bankruptcy case against the debtor is proceeding, the ruling could create evidentiary findings that could ultimately prejudice the debtor, bankruptcy estate, and any claims the trustee possibly holds. *In re Aldrich Pump LLC*, 20-30608 (JCW), 2021 WL 3729335, at *31 (Bankr. W.D.N.C. Aug. 23, 2021).

Further, if Corizon was of the position that any ruling on the Motion for Summary Judgment as to these defendants were appealable or subject to reconsideration, it would not be able to raise these issues due to the stay. If the Motion for Summary Judgment as to Defendants herein is denied and Plaintiff negotiates settlement directly with these five

defendants (or any one of them), the results could impact liability for Corizon without Corizon being represented or heard in such negotiations. On the same note, if the case as to Defendants herein proceeds to trial, any evidentiary rulings or trial results could have an impact on evidentiary issues or indemnity claims against Corizon and its indemnitees.

## III.   **CONCLUSION**

Defendants herein respectfully request the Court find that the stay also apply to Defendants herein pursuant to the Bankruptcy Court's Order, sections 105(a) and 362(a)(1) of the Bankruptcy Code as "action[s] or proceeding[s] against the debtor" to recover prepetition claims, and for the equitable reasons as explained above.

**RESPECTFULLY SUBMITTED** this 10th day of March, 2023.


QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


By:  /s/Sydney D. Goodhand
      Anthony J. Fernandez
      Sydney D. Goodhand
      *Attorneys for Defendants Corizon Health,*
      *Inc., Christopher Johnson, DO, Cindy*
      *Walton-Sparks, Kimberly Brinton, State of*
      *Arizona, and Claudine Kabongo*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March 2023, I electronically transmitted the

foregoing with the Clerk of the Court using the CM/ECF system for filing, and copies were

issued electronically to all counsel of record:

Angel A. Raymond
A. A. RAYMOND LAW FIRM, PLLC
44400 W. Honeycutt Rd., Ste. 110
Maricopa, AZ 85138
angel@aaraymondlaw.com
*Attorneys for Plaintiff*

and

Cynthia Y. Patane
KENT & WITTEKIND, PC
909 East Missouri Avenue
Phoenix, AZ 85014
cpatane@kwlaw-az.com
*Attorneys for Co-Defendants*

By: ___/s/Barbara McKinley_____

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TEHUM CARE SERVICES, INC.,[1] | ) | Case No. 23-90086 (CML) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**DEBTOR'S EMERGENCY MOTION TO
<u>EXTEND AND ENFORCE THE AUTOMATIC STAY</u>**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN FEBRUARY 21, 2023.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Tehum Care Services, Inc., the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") respectfully states the following in support of this motion (this "<u>Motion</u>"):

**<u>Preliminary Statement</u>**

1.     The Debtor is the sole surviving entity of a combination merger by and between the Debtor and certain non-debtor parties, which became effective in May 2022. Immediately following the merger, the Debtor entered into that certain *Agreement and Plan of Divisional Merger*, dated May 1, 2022, thereby effectuating a divisional merger (the "<u>Divisional Merger</u>") pursuant to the Texas Business Organizations Code ("<u>TBOC</u>"). Certain assets and liabilities were transferred to CHS TX, Inc. ("<u>CHS</u>"), with other assets and liabilities remaining with the Debtor.

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

2.      As part of the Divisional Merger, the Debtor entered into and became the payee under that certain Funding Agreement, dated May 5, 2022 (the "Funding Agreement"), under which the Debtor is entitled to receive funds up to an agreed aggregate $15 million cap to pay the liabilities assumed by the Debtor as part of the Divisional Merger.  The Debtor spent the second half of 2022 attempting to wind down its assets and liabilities pursuant to the Divisional Merger, but ongoing litigation and associated costs have made and out-of-court wind down impractical; chapter 11 is the preferred and more efficient method to utilize the Debtor's limited remaining assets to maximize recoveries for its creditors.

3.      Through this chapter 11 process, the Debtor hopes to effectuate a plan of liquidation to maximize and expedite creditor recovery.  However, as of the Petition Date, there are several hundred pending lawsuits and arbitrations throughout the country—some of which are attacking or may attack the validity of the Divisional Merger—where the Debtor is one of multiple co-defendants, with many of the Debtor's co-defendants having contractual indemnity rights against the Debtor for any judgment rendered against them.  Therefore, the best way to ensure that creditor recoveries are not diminished by piece-meal litigation in multiple venues across the country is for the Court to extend the automatic stay to protect co-defendants holding an indemnity right against the Debtor, while the Debtor formulates and consummates a plan of liquidation.

4.      For example, in one litigation that was pending in Missouri state court (that has been removed to the U.S. Bankruptcy Court for the Western District of Missouri, Central Division (Dow, J.), Adversary No. 23-4005, the plaintiff sought appointment of a receiver over the Debtor and certain other defendants (including CHS, formed in connection with the Divisional Merger), and sought to vest the receiver with the right to pursue an essential unwinding of the Divisional Merger, including through causes of action that are now property of the estate (like fraudulent

4854-3183-7777

conveyance and successor liability).   Absent the requested relief, parties other than the Debtor

could be vested with, and pursue, causes of action to benefit themselves, notwithstanding that such

causes of action are now property of the estate and subject to this Court's exclusive jurisdiction.

5.      The requested relief is therefore necessary to (i) protect the Debtor's estate from

opportunistic plaintiffs who are seeking or may seek to unwind the Divisional Merger and

otherwise end-run the automatic stay to the detriment of the Debtor's other creditors and

(ii) protect the Debtor from indemnity claims while it proceeds through chapter 11 and formulates

an exit strategy.   Consequently, by this Motion, the Debtor seeks an extension and enforcement of

the automatic stay in pending state and federal court litigation and other proceedings that will

otherwise deplete its bankruptcy estate, greatly jeopardize the success of this chapter 11

proceeding, and otherwise encroach upon—if not entirely upend—this Court's jurisdiction.

6.      Following the commencement of this chapter 11 case on February 13, 2023

(the "Petition Date"), the Debtor either has filed, or is in the process of filing, suggestions of

bankruptcy in multiple pending state and federal court actions (collectively, the "Lawsuits").   In

addition to the Debtor, in many Lawsuits claims are asserted against other parties to whom the

Debtor owes indemnification obligations: (a) non-debtor former clients and/or their employees

(collectively,   the "Indemnified Clients");   (b) former   officers   and   directors   (collectively,

the "Indemnified D&Os"); and (c) non-debtor affiliates, CHS and YesCare Corp. (collectively,

the "Non-Debtor Affiliates," and together with the Indemnified D&Os and the Indemnified

Clients, the "Non-Debtor Indemnified Parties").

7.      The Lawsuits generally fall into four categories:   (a) vendor lawsuits, typically

asserting breach of contract claims against the Debtor and certain Indemnified Clients for unpaid

invoices; (b) professional liability lawsuits, typically asserting medical malpractice and related

claims against the Debtor, certain Indemnified Clients, certain Indemnified D&Os, and individual former employee medical providers; (c) employment lawsuits, asserting employment discrimination or similar claims against the Debtor, certain Indemnified D&Os, and certain Indemnified Clients; and (d) workers' compensation lawsuits against the Debtor only. In some of the aforementioned Lawsuits, the plaintiffs have asserted claims or equitable remedies that include successor liability, alter ego, veil piercing, and/or fraudulent transfer claims against the Non-Debtor Affiliates.

8.      As detailed below, under well-established Fifth Circuit precedent, actions against non-debtor parties may be stayed under section 362 of the Bankruptcy Code where such non-debtor parties share such an identity of interest with the debtor that the debtor is, in effect, the real party defendant, and that a judgment against the non-debtor party will result in claim against the debtor. Furthermore, where claims become property of the debtor's estate upon the commencement of a bankruptcy case, the automatic stay automatically enjoins actions by non-debtors to bring such claims, to prevent non-debtors from exercising control over property of the estate.

9.      The Debtor has contractually agreed to indemnify each of the Non-Debtor Indemnified Parties. Accordingly, any claim or final resolution against any of the Non-Debtor Indemnified Parties would result in indemnification liability for the Debtor and indemnification claims asserted against the Debtor in this chapter 11 case. Actions against the Non-Debtor Indemnified Parties should thus be enjoined by section 362(a)(1) as "action[s] or proceeding[s] against the debtor" to recover prepetition claims. *See* 11 U.S.C. § 362(a)(1). Furthermore, all claims asserted against the Non-Debtor Affiliates are property of the Debtor's bankruptcy estate

4

and are enjoined as acts to "exercise control over property of the [Debtor's] estate" under section 362(a)(3). *See id.* § 362(a)(3).

10.     Permitting the Lawsuits to continue against the Non-Debtor Indemnified Parties notwithstanding the automatic stay would undoubtedly interfere with this chapter 11 proceeding and allow non-debtors to exercise control over and dissipate property of the Debtor's estate.  For these reasons, the plaintiffs' pursuit of claims against the Non-Debtor Indemnified Parties in the Lawsuits should be prohibited.

## Jurisdiction and Venue

11.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

12.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The bases for the relief requested herein are sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

14.     Until May 5, 2022, the Debtor (then named Corizon Health, Inc.) was a nationwide provider of correctional healthcare, providing services in multiple states across the United States. In the ordinary course of its business, the Debtor entered into agreements with various (typically governmental) entities under which the Debtor would provide, or arrange for the provision of, healthcare services to certain inmates or detainees of the contract counterparty.   These counterparties typically required the Debtor to agree to broad indemnification obligations.  Each indemnification provision is substantially similar, albeit with slight variations.  One exemplar provision is as follows:

4854-3183-7777

     10.3   <u>Indemnity</u>.   Corizon agrees to indemnify and hold harmless, pay the cost of defense, including reasonable attorney's fees, and save the Sheriff, her officers, appointees, agents, and employees from any claim, action, lawsuit, loss, damage, cost, charge, judgments, liabilities, or expense of any kind whatsoever arising out of any act, action, neglect, omission and/or failure to act by Corizon, including but not limited to, any claims, amounts or injuries covered under the Workers' Compensation laws, except as a third party claim outside Workers' Compensation, resulting or arising from Corizon's obligations and duties under this Agreement, except that neither Corizon nor any of its subcontractors shall be liable for any injury or damage caused by or resulting from the sole or partial negligence of the Sheriff, her officers, agents, and/or employees.

     15.   By the end of 2021, the Debtor's financial situation was dire.  Its financial position had worsened in recent years due to revenue declines, margin compression, and deteriorating liquidity; it was operating in a significant negative working capital position due to its debt obligations; and it faced increased exposure to professional liability claims (indeed, hundreds) to the tune of an estimated $88 million.

     16.   Given the Debtor's financial position, and hoping to stave off a bankruptcy filing, in May 2022, the Debtor effectuated the by-the-book Divisional Merger.  Under the Divisional Merger, the Debtor continued in existence and was allocated and remained vested with all inactive and expired customer contracts, as well as all liabilities related to such contracts.  In return, the Debtor was released from nearly $100 million of senior secured debt obligations, which were then allocated to a new entity, CHS.  Moreover, as part of the Divisional Merger, the Debtor was allocated $1 million in cash, as well as the right to draw on the $15 million Funding Agreement with M2 LoanCo, LLC, $11 million of which was earmarked for the Debtor's creditors.

     17.   Also as part of the Divisional Merger, CHS was created and allocated certain of the Debtor's former assets.  CHS  was subsequently acquired by YesCare Corp.  The Divisional Merger was approved by the Texas Secretary of State, effective as of May 5, 2022.

     18.   Under the terms of the Divisional Merger, the Debtor agreed to "indemnify, defend, and hold harmless" CHS "from and against, and reimburse [CHS] for, any and all losses, damages,

costs, expenses, taxes, liabilities, obligations, penalties, fines, claims of any kind (including

reasonable attorneys' fees) (collectively, "Losses"), suffered or incurred, or that may be suffered

or incurred, by [CHS] to the extent such Losses arise from or relate to" the assets or liabilities

allocated to the Debtor in the Divisional Merger.

19.     In its company Bylaws, the Debtor also agreed to indemnify its directors and

officers under certain circumstances.  The Bylaws state, in relevant part:

> The [Debtor] shall indemnify any person who was or is a party or is
> threatened to be made a party to any threatened, pending, or completed
> action or other proceeding (whether civil, criminal, administrative,
> arbitrative, or investigative). . .by reason of the fact that the person (1) is or
> was a director or officer of the [Debtor]; or (2) while a director of the
> [Debtor], is or was serving at the request of the [Debtor] as a partner,
> director, officer, venturer, proprietor, trustee, employee, administrator, or
> agent of another entity, organization, or an employee benefit plan. . .against
> all judgments (including arbitration awards), court costs, penalties,
> settlements, fines, excise, and other similar taxes and reasonable attorneys'
> fees. . .actually incurred by the covered person in connection with such
> proceeding. The right to indemnification in this Section [ ] shall continue as
> to a covered person who has ceased to be a director, officer, or delegate and
> shall inure to his or her heirs, executors, or administrators.

20.     The Debtor is actively winding down its business as it is no longer an operating

entity with any active contracts or medical service providers.  Although the Debtor had hoped to

complete an out-of-court wind down of its business, the ongoing litigation has made it

impracticable for the Debtor to continue its out-of-court efforts while, at the same time, ensuring

the maximum recovery for creditors.  This chapter 11 case, and an extension of the automatic stay

as requested herein, are necessary to ensure that all creditor recoveries are maximized and placed

on a level playing field, without one creditor racing to a courthouse in another state to the detriment

of other creditors.

21.     On the Petition Date, the Debtor filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code.  The Debtor is operating as a debtor in possession pursuant to

4854-3183-7777

sections 1107(a) and 1108 of the Bankruptcy Code.  No committee has yet been appointed, and no party has requested the appointment of a trustee or examiner in this chapter 11 case.

22.     This Motion is supported by the *Declaration of Russell A. Perry in Support of Debtor's Emergency Motion to Extend and Enforce the Automatic Stay*, which is attached as **Exhibit A** incorporated herein by reference.

## Relief Requested

23.     By this Motion, the Debtor seeks entry of an order, substantially in the form attached to this Motion, (a) confirming that the automatic stay applies, or extending the automatic stay, to cover the Non-Debtor Indemnified Parties in the Lawsuits, (b) enforcing the protections of sections 362 in each of the Lawsuits, and (c) granting related relief.

## Basis for Relief

**I.     The Automatic Stay Prohibits, or Should be Extended to Prohibit, All of the Claims Asserted Against the Non-Debtor Indemnified Parties in the Lawsuits.**

24.     Pursuant to section 362 of the Bankruptcy Code, the commencement of this chapter 11 case operated as an immediate stay applicable to all persons (including individuals, partnerships, corporations, and all those acting for or on their behalf) and all governmental units (and all those acting for or on their behalf) of, among other things: "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the [D]ebtor that was or could have been commenced before the commencement of the [Debtor's chapter 11 case], or to recover a claim against the [D]ebtor that arose before the commencement of the [Debtor's chapter 11 case]; (2) the enforcement, against the [D]ebtor or against property of the estate, of a judgment obtained before the commencement of the [Debtor's chapter 11 case]; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [or] . . . . (6) any act to collect,

8

assess, or recover a claim against the [D]ebtor that arose before the commencement of the [Debtor's chapter 11 case]. *See* 11 U.S.C. § 362(a)(1)-(3), (6).

25. The injunction contained in section 362 of the Bankruptcy Code is self-executing, *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008), and constitutes a fundamental debtor protection that, together with other provisions of the Bankruptcy Code, provides a debtor with a "breathing spell" that is essential to a successful chapter 11 process. *Halo Wireless, Inc. v. Alenco Commc'ns, Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir. 2012) (internal quotations omitted); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." (citation and internal quotation marks omitted)).

26. "The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir.2003) (citing *GATX Aircraft Corp. v. M/V Courtney Leigh)*, 768 F.2d 711, 716 (5th Cir. 1985)); *see Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.)*, 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." (citation omitted)).  Or, as stated by the Fifth Circuit, the stay "prevent[s] a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986).

4854-3183-7777

27.     The legislative history of section 362 of the Bankruptcy Code indicates that Congress intended for the scope of the automatic stay to be sweeping, in order to effect its protective purpose on behalf of debtors:

> The automatic stay is one of the most important protections provided by the Bankruptcy laws. Nevertheless, ***the Bankruptcy Courts must have the power to enjoin actions not covered by the automatic stay, in order that the bankruptcy case may proceed unembarrassed by multiple litigation*** The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595, at 12, 340 (1977) (emphasis added), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 5973, 6296-97; S. Rep. No. 95-989, at 49, 55-56 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41.

28.     As detailed further below, it is well-settled that the protections afforded by the automatic stay may be extended to non-debtors in certain circumstances, including where the debtor and non-debtor parties can be considered to share a unitary interest, or where claims asserted against the non-debtor parties are property of the debtor's estate.  *See, e.g.*, *In re S.I. Acquisition, Inc.*, 817 F.2d at 1148–50.

29.     The Debtor and the Non-Debtor Indemnified Parties share such identity that claims ostensibly against the Non-Debtor Indemnified Parties in the Lawsuits are in effect and in reality against the Debtor.  Furthermore, the claims asserted by various plaintiffs against the Non-Debtor Affiliates in the Lawsuits, including equitable remedies such as successor liability, alter ego and veil piercing theories, are property of the Debtor's bankruptcy estate under section 541(a) of the Bankruptcy Code.  *See, e.g.*, cases cited *infra* ¶¶ 36-38.  Allowing the Lawsuits to proceed against

the Non-Debtor Indemnified Parties will adversely impact the Debtor's estate, to the determinant

of other creditors, and thus should be stayed pursuant to section 362(a) of the Bankruptcy Code.

**A.    The Debtor and the Non-Debtor Indemnified Parties Share Such Identity by Virtue of the Debtor's Indemnification Obligations that a Judgment Against a Non-Debtor Indemnified Party is in Effect a Judgment Against the Debtor.**

30.    The claims asserted in the Lawsuits against the Non-Debtor Indemnified Parties

have only one purpose or effect:  to maximize recovery of prepetition claims held by plaintiffs

against the Debtor.  Given that the Non-Debtor Indemnified Parties are indemnified by the Debtor,

any claim or final resolution against the Non-Debtor Indemnified Parties will automatically result

in indemnification liability for the Debtor and indemnification claims asserted against the Debtor

in this chapter 11 case.  Furthermore, there are no distinct direct claims asserted against the Non-

Debtor Affiliates in any of the Lawsuits—each claim is derivative, and inextricably relies upon the

Debtor's alleged prepetition acts.  Accordingly, each claim against the Non-Debtor Indemnified

Parties should be enjoined by section 362(a)(1) as an "action or proceeding against the debtor" to

recover prepetition claims.

31.    Fifth Circuit precedent has recognized that the automatic stay should be extended

when "there is such identity between the debtor and the third-party defendant that the debtor may

be said to be the real party defendant and that a judgment against the third-party defendant will in

effect be a judgment or finding against the debtor." *Reliant Energy*, 349 F.3d at 825 (quoting *A.H.*

*Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986));

*Beran v. World Telemetry Inc.*, 747 F. Supp. 2d 719, 722–23 (S.D. Tex. 2010).

32.    In one of the seminal cases on stay extension, the Fourth Circuit in *A.H. Robins*

explained that an "illustration" of a situation demonstrating the requisite unitary identity is "a suit

against a third-party who is entitled to absolute indemnity by the debtor on account of any

judgment that might result against them in the case." 788 F.2d at 999.  Indeed, the court continued,

11

4854-3183-7777

"[t]o refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *Id.* (citing *Plessey Precision Metals, Inc. v. The Metal Center, Inc. (In re Metal Ctr. Inc.)*, 31 B.R. 458, 462 (D. Conn. 1983)); *see also North Star Contracting Corp. v. McSpedon (In re North Star Contracting Corp.)*, 125 B.R. 368, 371 (S.D.N.Y. 1991) ("*Robins* and other courts have recognized that an identity of interest exists between a debtor and a third party non-debtor when a right to indemnification exists.  These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets." (citing cases)).

33.     Following *A.H. Robins*, courts both in and outside the Fifth Circuit have found that a debtor's indemnification obligations warrant the extension of the automatic stay to the indemnified non-debtors. *See, e.g., Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, No. 4:12-3120, 2013 WL 1948766, at \*5 (S.D. Tex. May 9, 2013) (extending the automatic stay to debtors' employees because there could be "potential corporate indemnity obligations to one or more of the [debtors' employees] by virtue of a formal indemnity relationship."); *In re W.R. Grace & Co.*, No. 01-01139, 2004 WL 954772, at \*3 (Bankr. D. Del. Apr. 29, 2004) (extending the stay to a non-debtor that was entitled to indemnification by the debtor and explaining that a judgment against the non-debtor would be, in effect, a judgment against the debtor); *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (affirming the bankruptcy court's decision staying an action against a non-debtor entitled to indemnity by the debtor); *see also Reliant Energy*, 349 F.3d at 825 ("This Court recognized the *A.H. Robins Co.*'s exception in *Arnold* [*v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001)], but declined to extend it in that case because no claim of a formal tie or contractual indemnification had been made to create an identity of interests between the debtor and nondebtor."); *Arnold*, 278 F.3d at 436 (indicating that "a formal tie or contractual indemnification"

can create the requisite identity of interests); *Beran*, 747 F. Supp. 2d at 723 (same); *Am. Honda Fin. Corp. v. Salyer*, No. 3:03-cv-651, 2007 WL 1158114, at *3 (S.D. Miss. Apr. 18, 2007) ("Fifth Circuit precedent . . . allows a court to extend the automatic stay provision of 11 U.S.C. § 362 by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant.").

34.      Here, each Non-Debtor Indemnified Party is a party to an indemnification agreement with the Debtor.  While the Debtor reserves all rights, on its face there seems to be little ground (if any) to dispute the Debtor's indemnification obligations to the Non-Debtor Indemnified Parties.  Thus, absent any yet-to-be-discovered defenses to such indemnification obligations, any judgment against any Non-Debtor Indemnified Party would entitle such party to file a claim for indemnification against the Debtor in this chapter 11 case.  In effect then, the Debtor and the Non-Debtor Indemnified Parties share such identity of interest that a continuation of any Lawsuit as to the Non-Debtor Indemnified Parties would be a *de facto* proceeding against the Debtor, in frustration of the purposes behind the automatic stay.  The Debtor's indemnity obligations would deplete its assets to the detriment of its creditor body as a whole.  Accordingly, actions against the Non-Debtor Indemnified Parties in the Lawsuits should be stayed under section 362(a)(1).

**B.      Actions Against the Non-Debtor Affiliates Are Property of the Debtor's Estate and Automatically Stayed.**

35.      The Lawsuits against the Non-Debtor Affiliates assert some variation of alter ego/veil piercing, successor liability, and/or fraudulent transfer claims.  Each such claim is property of the Debtor's estate and thus subject to the automatic stay.

36.      Section 541 of the Bankruptcy Code establishes that the filing of a bankruptcy case creates an "estate."  11 U.S.C. § 541(a).  That estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held.

*Id.* § 541(a)(1). Thus, the estate includes all state and federal legal rights and causes of action held by the debtor at the commencement of the bankruptcy case. *See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1149 (5th Cir. 1987) (citing *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir.1983)).

37.   Alter ego/veil piercing claims are derivative claims that are property of the debtor's bankruptcy estate. *See, e.g., In re S.I. Acquisition, Inc.*, 817 F.2d at 1153 (holding that alter ego claims are property of a debtor's estate and staying a third party action under section 362(a)(3)); *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 365–66 (5th Cir. 1999) (holding that reverse veil piercing claims are property of the debtor's estate and enjoining a third party action).   Similarly, it is well-established that fraudulent transfer claims are property of a debtor's bankruptcy estate. *See, e.g., In re MortgageAmerica Corp.*, 714 F.2d at 1275; *In re S.I. Acquisition, Inc.*, 817 F.2d at 1150; *Schertz-Cibolo—Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284–86 (5th Cir. 1994); *The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 261 (5th Cir. 2010).

38.   When claims against a non-debtor are property of the estate, only the debtor has standing to pursue them and the pursuit of such claims by a non-debtor is a violation of 11 U.S.C. § 362(a)(3). *See In re S.I. Acquisition, Inc.*, 817 F.2d at 1150 ("[A] section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor [or] that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor."); *In re Educators Grp. Health Tr.*, 25 F.3d at 1284 ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."). This is true even if outside the bankruptcy proceeding, a non-debtor was otherwise entitled to assert such

14

claims. *See In re Moore*, 608 F.3d at 261 ("The right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way." (citation omitted)).  Thus, any actions based on alter ego/veil piercing or fraudulent transfer theories are automatically stayed by section 362(a)(3) and plaintiffs asserting any such claims are automatically divested of standing to pursue such claims as they became property of the Debtor's estate on the Petition Date.

39.     All causes of action against the Non-Debtor Affiliates are based on alter ego/veil piercing or fraudulent transfer-type theories.  Such claims are property of the Debtor's estate, and thus the Debtor alone has standing to bring such claims, and each such cause of action was automatically stayed under 11 U.S.C. § 362(a)(3) upon the Debtor's chapter 11 filing.

## II.     This Court Should Exercise Its Broad Equitable Powers to Extend and Enforce the Automatic Stay.

40.     This Court also has authority under section 105(a) of the Bankruptcy Code to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).  As explained in the legislative history, section 105 specifically provides the Court authority to stay actions that are not directly subject to the automatic stay:

> ***The court has ample . . . powers to stay actions not covered by the automatic stay.*** Section 105 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity.

S. Rep. No. 95-989, at 51; H. Rep. No. 95-595, at 341-42 (emphasis added).

41.     Granting the relief requested herein is justified under section 105(a) of the Bankruptcy Code.  Indeed, the Fifth Circuit has confirmed that "beyond the automatic stay provisions of section 362(a)(1) and (3), the bankruptcy court may affirmatively stay proceedings

15

pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105. . . . Section 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities." *In re S.I. Acquisition, Inc.*, 817 F.2d at 1146 n.3.

42.   The relief requested in this Motion is fully consistent with the terms of the Bankruptcy Code and will protect and preserve the Debtor's assets and the value thereof for the benefit of all stakeholders.  It is manifestly appropriate for the Court to extend and enforce the automatic stay to claims against the Non-Debtor Indemnified Parties in the Lawsuits because, as stated previously, any judgment against the Non-Debtor Indemnified Parties is effectively a judgment against the Debtor.  Allowing the continued assertion of claims against the Non-Debtor Indemnified Parties would thus permit indirectly what is expressly prohibited by the Bankruptcy Code.  Furthermore, also as stated above, the claims against the Non-Debtor Affiliates are property of the Debtor's bankruptcy estate—prohibiting third parties from asserting such claims not only comports with the goals of protecting the Debtor's assets and maximizing the value of the Debtor's estate, but is mandatory to protect property of the Debtor's estate and this Court's exclusive jurisdiction over the same.

43.   Notwithstanding the self-executing and global nature of the automatic stay, not all parties affected or potentially affected by the commencement of this chapter 11 case are aware of this statutory provision or its significance and impact, and some have disregarded, or may even affirmatively disregard the same.  Debtors often must advise third parties of the existence, reach, and effects of the automatic stay, especially—as is the case here—where the Debtor is a party in hundreds of Lawsuits across the Nation.  To avoid any confusion in the future, and in an effort to provide notice to parties unfamiliar with the Bankruptcy Code of the existence, scope, and effect of 11 U.S.C. § 362, it is prudent and particularly appropriate in this chapter 11 case to obtain an

4854-3183-7777

order confirming and reinforcing the legal tenets discussed herein.  An order providing notice of and enforcing the protections provided by the automatic stay will help to protect the Debtor from unintentional stay violations and will also conserve resources by preventing the Debtor from having to commence additional proceedings to enforce the stay on an ad hoc basis.

44.     Most fundamentally, the relief requested in this Motion is necessary to ensure that the Debtor receives the full and complete benefit of the much needed "breathing spell" that is intended by the automatic stay under 11 U.S.C. § 362(a).  Such a breathing spell will provide the Debtor and its professionals the necessary time required to formulate a plan to maximize creditor recoveries through this chapter 11 case.

45.     Based on the foregoing, the Debtor respectfully requests that this Court exercise its broad equitable powers to stay all claims in the Lawsuits against the Non-Debtor Indemnified Parties and enforce the automatic stay with respect to such claims.

## Emergency Consideration

46.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtor respectfully requests emergency consideration of this Motion. Emergency relief is necessary in order to prevent the continuation of existing Lawsuits or commencement of new Lawsuits against the Non-Debtor Indemnified Parties, which would adversely affect the Debtor's estate as described above either because (a) plaintiffs are asserting claims that are property of the estate or (b) plaintiffs seek judgment against parties with indemnification rights against the Debtor.

## Reservation of Rights

47.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy

law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens or claims (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens and claims.

### No Prior Request

48.    No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

4854-3183-7777

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 17th day of February, 2023.

**GRAY REED**

By:   */s/ Jason S. Brookner*
       Jason S. Brookner
       Texas Bar No. 24033684
       Aaron M. Kaufman
       Texas Bar No. 24060067
       Lydia R. Webb
       Texas Bar No. 24083758
       Amber M. Carson
       Texas Bar No. 24075610
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:   (713) 986-7127
Facsimile:    (713) 986-5966
Email:       jbrookner@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com
          acarson@grayreed.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties authorized to receive electronic notice in this case.

*/s/ Jason S. Brookner*
Jason S. Brookner

4854-3183-7777

**Exhibit A**

**Perry Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Case No. 23-90086 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

## DECLARATION OF RUSSELL A. PERRY IN SUPPORT OF DEBTOR'S
## EMERGENCY MOTION TO EXTEND AND ENFORCE THE AUTOMATIC STAY

Russell A. Perry declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am the Chief Restructuring Officer of Tehum Care Services, Inc., the above-captioned debtor and debtor in possession (the "Debtor"). I am also a Senior Managing Director of Ankura Consulting Group, LLC ("Ankura"). I was retained by the Debtor as Chief Restructuring Offer on February 13, 2023 (the "Petition Date"), shortly before the Debtor's chapter 11 petition was filed. I submit this declaration (this "Declaration") in support of the *Debtor's Emergency Motion to Extend and Enforce the Automatic Stay* (the "Stay Extension Motion").[2] Except as otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge of the Debtor's operations and finances, which is somewhat limited given that I have only been retained for four days; (b) my review of certain relevant documents; (c) information provided to me by Ankura professionals working under my direction and supervision; (d) information provided to me by members of the Debtor's management, professionals and others

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Stay Extension Motion.

4854-3183-7777

working for the Debtors, or their respective other advisors; or (e) my opinion based upon my experience and knowledge. I am over the age of 18, and I am authorized to submit this Declaration on behalf of the Debtor. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

2.    I hold a bachelor's degree in agribusiness, an MBA degree from Texas A&M University, and am a CFA® charterholder. I have more than fifteen years of restructuring and bankruptcy-related experience, with a focus on the U.S. healthcare market. During that time, I have advised and assisted distressed companies across various complex financial, operational, and strategic situations, including serving in interim management, Chief Transformation Officer, Chief Restructuring Officer, Strategic Restructuring Advisor, and Independent Manager positions. My experience includes financial statement analysis, financial projection development, liquidity and cash management, M&A support, stakeholder negotiations, balance sheet recapitalization and restructuring, postpetition financing and sourcing, and bankruptcy preparation and administration.

3.    I have played a key role in many successful chapter 11 restructurings in this District and others, including *In re Pipeline Health System, LLC*, No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 2, 2022); *In re SQLC Senior Living Ctr. at Corpus Christi Inc.*, No. 2:19-bk-20063 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2019); *In re Tarrant County Senior Living Ctr., Inc. d/b/a The Stayton at Museum Way*, No. 19-33756 (SGJ) (Bankr. N.D. Tex. Nov. 5, 2019); *In re Trident Holding Co., LLC*, No. 19-10384 (SHL) (Bankr. S.D.N.Y. Feb. 10, 2019); *In re Virginia United Methodist Homes of Williamsburg, Inc.*, No. 13-31098 (KRH) (Bankr. E.D. Va. Mar. 1, 2013); *In re Franciscan Cmtys. St. Mary of the Woods*, No. 1:11-bk-19865 (JPS) (Bankr. N.D. Ohio Nov. 21, 2011); *In re the Clare at Water Tower*, No. 11-46151 (TAB) (Bankr. N.D. Ill. Nov. 14, 2011); *In re Fairview Village* No. 1:11-bk-04392 (TAB) (Bankr. N.D. Ill. Feb. 4, 2011); and *In re Forum*

4854-3183-7777

*Health*, No. 9-40795 (KW) (Bankr. N.D. Ohio Mar. 16, 2009). I have also served as Strategic Restructuring Advisor, as a member of interim management, and as independent manager in other confidential, out-of-court matters.

**A.    Company Background and Divisional Merger**

4.    Until May 5, 2022, the Debtor (then named Corizon Health, Inc.) was a nationwide provider of correctional healthcare, providing services in multiple states across the United States. In the ordinary course of its business, the Debtor entered into agreements with various (typically governmental) entities under which the Debtor would provide, or arrange for the provision of, healthcare services to certain inmates or detainees of the contract counterparty. To the best of my knowledge, and upon information and belief, under all or substantially all of the Debtor's customer agreements, the Debtor agreed to provide broad indemnification for its customers and their employees, agents, and representatives. To the best of my knowledge, information and belief, each indemnification provision is substantially similar, albeit with slight variations in form.

5.    By the end of 2021, the Debtor's financial situation was dire. Its financial position had worsened in recent years due to revenue declines, margin compression, and deteriorating liquidity; it was operating in a significant negative working capital position due to its debt obligations; and it faced increased exposure to professional liability claims (indeed, hundreds) to the tune of an estimated $88 million.

6.    Hoping to stave off a bankruptcy filing to address the Debtor's secured debt obligations, in early 2022, the Debtor's Board, with the help of counsel, began considering restructuring alternatives other than bankruptcy. One restructuring alternative was a divisional merger under the Texas Business Organizations Code (the "TBOC")—a decades-old statutory framework that allows one or more corporate entities to merge into one or more surviving or new

3

legal entities and re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors.

7.       To ensure that a divisional merger was a viable and fair path forward, on February 8, 2022, the Debtor engaged independent financial firm, FTI Capital Advisors, LLC ("FTI"), to render a fairness opinion on the proposed divisional merger.  FTI conducted widescale due diligence, including a review and analysis of Corizon's financial history and contingent liabilities. Ultimately, the conclusion was reached that the proposed divisional merger provided Corizon's unsecured creditors with access to equal or greater value than not completing the merger, supported by, among other things, the availability of $15,000,000 from M2 LoanCo, LLC pursuant to a funding agreement (the "Funding Agreement").  FTI confirmed the fairness of the divisional merger in a May 1, 2022, fairness opinion sent to the Debtor's Board of Directors.

8.       Convinced that a divisional merger was the most prudent path forward and the best path to repay its creditors as a whole, in May 2022, the Debtor and several of its affiliates, including Corizon, LLC, Valitás Health Services, Inc., and Corizon Health of New Jersey, LLC (collectively, the "Merger Entities") executed a corporate reorganization effectuated through two merger transactions under the TBOC:  a combination merger and a divisional merger.  The following steps comprised the combination merger:

    a.    On April 28, 2022, the Debtor (previously incorporated in Delaware) converted to a Texas corporation.

    b.    The Debtor and each Merger Entity merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").

    c.    The Debtor filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022, and the Combination Merger became effective on May 5, 2022.

    d.    The Debtor was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the Merger Entities. The Merger Entities ceased to exist.

4

4854-3183-7777

9.      The Debtor then effectuated a by-the-book divisional merger (the "Divisional Merger"), as follows:

      a.      The Debtor drafted the Plan of Merger, which provided that CHS TX, Inc. ("CHS") would be formed and documented which assets and liabilities were to remain with the Debtor and which were to be allocated to CHS.

      b.      The approved Plan of Merger was in writing and included all information required by the TBOC.

      c.      The Debtor filed the Certificate of Merger and Certificate of Formation for CHS. with the Texas Secretary of State on May 3, 2022, and the Divisional Merger became effective on May 5, 2022.

      d.      On May 11, 2022, the Texas Secretary of State approved and accepted the Certificate of Merger and Certificate of Formation for CHS, effective as of May 5, 2022.

10.      Under the Divisional Merger, the Debtor remained in existence and was allocated and remained vested with all inactive and expired customer contracts, as well as all liabilities related to such contracts.  In return, the Debtor was released from nearly $100 million of senior secured debt obligations, which were allocated to CHS.  Moreover, as part of the Divisional Merger, the Debtor was allocated $1 million in cash, as well as the right to draw on the $15 million Funding Agreement, $11 million of which was earmarked for the Debtor's creditors.

11.      CHS was subsequently acquired by YesCare Corp.  The Divisional Merger was approved by the Texas Secretary of State, effective as of May 5, 2022.

12.      Under the terms of the Divisional Merger, the Debtor agreed to "indemnify, defend, and hold harmless" CHS "from and against, and reimburse [CHS] for, any and all losses, damages, costs, expenses, taxes, liabilities, obligations, penalties, fines, claims of any kind (including reasonable attorneys' fees) (collectively, "Losses"), suffered or incurred, or that may be suffered or incurred, by [CHS] to the extent such Losses arise from or relate to" the assets or liabilities allocated to the Debtor in the Divisional Merger.

5

13.     The Debtor is actively winding down its business as it is no longer an operating entity with any active contracts or medical service providers.  Although the Debtor had hoped to complete an out-of-court wind down of its business while, at the same time, maximizing value for creditors, ongoing litigation has made that effort impracticable.  Through this chapter 11 process, the Debtor hopes to effectuate a plan of liquidation to maximize and expedite creditor recovery.

**B.      The Prepetition Lawsuits**

14.     Since the Petition Date, it is my understanding that the Debtor either has filed, or is in the process of filing, suggestions of bankruptcy in multiple pending state and federal court actions (collectively, the "Lawsuits").  In the Lawsuits, the plaintiffs assert causes of action against the Debtor, as well as (a) certain non-debtor former clients (collectively, the "Indemnified Clients") and (b) the Debtor's non-debtor affiliates, CHS and YesCare Corp. (collectively, the "Non-Debtor Affiliates," and together with the Indemnified Clients, the "Non-Debtor Indemnified Parties") to whom the Debtor also owes indemnification obligations.

15.     To the best of my knowledge, information and belief, the Lawsuits generally fall into four categories:  (a) vendor lawsuits, typically asserting breach of contract claims against the Debtor and certain Indemnified Clients for unpaid invoices; (b) professional liability lawsuits, typically asserting medical malpractice and related claims against the Debtor, certain Indemnified Clients, and individual former employee medical providers; (c) employment lawsuits, asserting employment discrimination or similar claims against the Debtor and Indemnified Clients; and (d) workers' compensation lawsuits against the Debtor only.

16.     In some of the aforementioned Lawsuits, the plaintiffs have asserted claims or equitable remedies that include successor liability, alter ego, veil piercing, and/or fraudulent transfer claims against the Non-Debtor Affiliates.  For example, in one litigation that was pending

4854-3183-7777

in Missouri state court (that has been removed to the U.S. Bankruptcy Court for the Western District of Missouri, Central Division (Dow, J.)), Adversary No. 23-4005-drd, the plaintiff sought appointment of a receiver over the Debtor and certain other defendants (including CHS), and sought to vest the receiver with the right to pursue an essential unwinding of the Divisional Merger, including through causes of action that are now property of the estate (like fraudulent conveyance and successor liability).  To the best of my knowledge, there have been no distinct direct claims asserted against the Non-Debtor Affiliates in any of the Lawsuits—each claim appears to be derivative, and inextricably relies upon, the Debtor's alleged prepetition acts.

17.     To the best of my knowledge, information and belief, each Non-Debtor Indemnified Party is a party to an indemnification agreement with the Debtor.  While the Debtor reserves all rights, there seems to be little ground (if any) to dispute the Debtor's indemnification obligations to the Non-Debtor Indemnified Parties.  Thus, absent any yet-to-be-discovered defenses to such indemnification obligations, any judgment against any Non-Debtor Indemnified Party would entitle such party to file a claim for indemnification against the Debtor in this chapter 11 case.  In effect then, a continuation of any Lawsuit as to the Non-Debtor Indemnified Parties would be a *de facto* proceeding against the Debtor, in frustration of the purposes behind the automatic stay.  I believe the Debtor's indemnity obligations would deplete its assets to the detriment of its creditor body as a whole.

18.     I believe that not all parties affected or potentially affected by the commencement of this chapter 11 case are aware of the automatic stay or its significance and impact, and some have disregarded, or may even affirmatively disregard, the same.  An order providing notice of and enforcing the protections provided by the automatic stay will help to protect the Debtor from both

7

purposeful and unintentional stay violations, and will also conserve resources by preventing the Debtor from having to commence additional proceedings to enforce the stay on an ad hoc basis.

19.     I believe that an extension of the automatic stay to cover the Non-Debtor Indemnified Parties is necessary to (a) protect the Debtor's estate from opportunistic plaintiffs who are seeking or may seek to unwind the Divisional Merger and otherwise attempt to end-run the automatic stay to the detriment of the Debtor's other creditors and (b) protect the Debtor from indemnity claims while it proceeds through chapter 11 and formulates an exit strategy.  Without such relief, I believe that the pending Lawsuits will deplete the Debtor's bankruptcy estate and greatly jeopardize the Debtor's ability to propose and obtain confirmation of a chapter 11 plan of liquidation.  Conversely, I believe that an extension of the automatic stay as requested in the Stay Extension Motion is necessary to ensure that all creditor recoveries are maximized and placed on a level playing field, without one creditor racing to a courthouse in another state to the detriment of other creditors.  Accordingly, I believe the Stay Extension Motion should be granted.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 17th day of February, 2023

*/s/ Russell A. Perry*
Russell A. Perry
Chief Restructuring Officer

8

4854-3183-7777

# EXHIBIT B

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 03, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TEHUM CARE SERVICES, INC., | ) | Case No. 23-90086 (CML) |
|  | ) |  |
| Debtor. | ) | **Re: Docket No. 7** |
|  | ) |  |

## ORDER REGARDING DEBTOR'S EMERGENCY MOTION
## TO EXTEND AND ENFORCE THE AUTOMATIC STAY

Pursuant to Section 105(a) of the Bankruptcy Code, and for the reasons stated on the record at the March 3, 2023 hearing (including preserving the rights of affected parties and preserving estate assets), the Court temporarily extends the automatic stay to the litigation claims on the attached <u>Exhibit 1</u> through May 18, 2023.

The Court will conduct an evidentiary hearing to consider the relief requested in the Debtor's Motion to Extend and Enforce the Automatic Stay (Docket No. 7) on May 17, 2023 at 1:00 p.m. (Central Time). Objections to the Motion must be filed by April 3, 2023. The Debtor must file any reply to objections by April 24, 2023.

Signed: March 03, 2023

_____

Christopher Lopez
United States Bankruptcy Judge

## **Exhibit 1**

| Case Caption | Indemnified Clients | Non-Debtor Affilates | Indemnified D&Os / Employees |
|---|---|---|---|
| *Edmo v. Corizon Inc. et al.*, No. 1:17-cv-00151-BLW U.S. District Court for the District of Idaho | Idaho Department of Corrections | | |
| N/A (Tort Claim Notice of Alex Scott) | Idaho Department of Corrections | | |
| *Lyles v. Papendick et al.*, No. 2:19-cv-10673-LJM-KGA U.S. District Court for the Eastern District of Missouri | | YesCare Corp. CHS TX, Inc. | |
| *Wolf v. Tewalt, et al.*, No. 1:21-cv-00226-BLW U.S. District Court for the District of Idaho | Rona Seigert (Idaho DOC employee) | | |
| *Branum v. City of Phoenix, et al*, No. 4:21-cv-00357-RM U.S. District Court for the District of Arizona | David Shinn, Arizona DOC Director | | |
| N/A (Tort Claim Notice of Bradley Armstrong) | Idaho Department of Corrections | | |
| *Cameron Regional Medical Center, Inc v. Corizon Health, Inc., et al.*, No. 5:22-cv-6122 U.S. District Court for the Western District of Missouri | | YesCare Corp. CHS TX, Inc. | |
| *Belcher v. Tewalt, et al.*, No. 1:21-cv-00393-BLW U.S. District Court for the District of Idaho | Rona Seigert (Idaho DOC employee) | | |
| *Belcher v. Grace, et al.*, No. 1:22-cv-00256-BLW U.S. District Court for the District of Idaho | Rona Seigert (Idaho DOC employee) | | |
| *Curators of the Univ. of Missouri et al. v. Tehum Care Servs., Inc., et al.*, No. 23-04005 U.S. Bankruptcy Court for the Western District of Missouri (*removed from* the Circuit Court of Boone County, Mo., Div. 4, No. 22BA-CV01701-01) | | YesCare Corp. CHS TX, Inc. | |
| *Capitol Eye Care Inc. v. Tehum Care Services Inc.*, No. 22AC-CC07354 Circuit Court of Cole County, Missouri | | YesCare Corp. CHS TX, Inc. | |
| *Brightly v. Corizon Health Inc., et al.*, No. 4:21-cv-127-JCH-PSOT U.S. District Court for the District of Arizona | David Shinn, Arizona DOC Director | | |
| *Mintun v. Corizon Health Inc., et al.*, No. 1:21-cv-00124-BLW U.S. District Court for the District of Idaho | Rona Seigert (Idaho DOC employee) | | |
| *Stenberg v. Corizon Health, Inc., et al.*, No. 4:20-cv-10674 U.S. District Court for the Eastern District of Michigan | | YesCare Corp. CHS TX, Inc. | Patricia Schmidt |
| *Halo Branded Solutions, Inv. v. Corizon Health Inc., et al.*, No. 2023LA000124 Circuit Court of 18th Judicial Circuit Court of Illinois | | YesCare Corp. CHS TX, Inc. | |
| *Bernstein v. Corizon Health Inc. et al.*, No. 18PI-CC00022 Circuit Court of Pike County, Missouri | Missouri Department of Corrections | | |
| *Hyman v. YesCare Corp. et al.*, No. 3:22-cv-01081 U.S. District Court for the Middle District of Tennessee | | YesCare Corp. CHS TX, Inc. | Sara Tirschwell, Scott King, Isaac Lefkowitz, Abraham Goldberger, & David Gefner |
| *Wilkinson v. Corizon Medical Services, et al.*, No. 1:22-cv-00104-REP U.S. District Court for the District of Idaho | Rona Seigert (Idaho DOC employee) | | |
| *Snider v. Corizon Medical et al.*, No. 1:20-cv-648 U.S. District Court for the Western District of Michigan | | | Patricia Schmidt |
| *Estate of Milkiewicz v. Genesee County et al.*, No. 2:17-cv-13047 U.S. District Court for the Eastern District of Michigan | Genesee County | | |
| *K.A. et al. v. City of New York et al.*, No. 1:16-cv-04936 U.S. District Court for the Southern District of New York | City of New York | | Sidney Wilson |
| *Jackson v. Corizon Health Inc. et al.*, No. 2:19-cv-13382-GAD-PTM U.S. District Court for the Eastern District of Michigan | | YesCare Corp. CHS TX, Inc. | |
| *Miotke v. Corizon Health Inc. et al.*, No. 19-cv-47201 Circuit Court of Oregon, County of Multnoman | Clackamas County | | |
| *Stewart v. Ryan et al.*, No. 2:20-cv-01376-ROS-DMF U.S. District Court for the District of Arizona | Charles Ryan (Arizona DOC Director) | | |
| *Maxim Healthcare Staffing Servs., Inc. v. Tehum Care Servs., Inc. et al.*, No. 3:23-cv-0018 U.S. District Court for the Middle District of Tennessee | | YesCare Corp. CHS TX, Inc. | |
| *Chapman v. Dunn et al.*, No. 2:20-cv-00007-WKW-CSC U.S. District Court for the Middle District of Alabama | Jefferson Dunn, Ruth Naglich, & Mary Cooks (Alabama DOC employees) | | |
| *Schroder v. Johnson, et al.*, No. 1:21-cv-00106-BLW U.S. District Court for the District of Idaho | Rona Seigert (Idaho DOC employee) | | |

| Case Caption | Indemnified Clients | Non-Debtor Affilates | Indemnified D&Os / Employees |
|---|---|---|---|
| *Schroder v. Zarkoff et al.*, No. 1:21-cv-00052-BLW<br>U.S. District Court for the District of Idaho | Rona Seigert<br>(Idaho DOC employee) | | |
| *Buchanan v. Tehum Care Services, Inc. et al.*, No. 4:22-cv-01361<br>U.S. District Court for the Eastern District of Missouri | | YesCare Corp.<br>CHS TX, Inc. | |
| *Coleman v. Corizon et al.*, No. 5:21-cv-13061<br>U.S. District Court for the Eastern District of Michigan | | | Patricia Schmidt |
| *Gamez v. United States, et al.*, No. 20-16180, 9th Cir. Court of Appeals<br>(*on appeal from* 2:17-cv-02044-JJT-ESW, U.S. District Court for the District of Arizona) | Charles Ryan & Richard Pratt<br>(Arizona DOC employees) | | |
| *Johnson v. Gulick et al.*, No. 2:20-cv-10147<br>U.S. District Court for the Eastern District of Michigan | | | Patricia Schmidt |
| *Blake v. Corizon et al.*, No. 22-3048, 10th Cir. Court of Appeals<br>(*on appeal from* 5:21-cv-3140-JAR-ADM, U.S. District Court for the District of Kansas) | | | Scot Yarnell |
| *Saint Alphonsus Health Sys., Inc. v. Tehum Care Servs., Inc., et al.*, No. 1:23-cv-00065<br>U.S. District Court for the District of Idaho | | YesCare Corp.<br>CHS TX, Inc. | Sara Tirschwell<br>Scott King |
| *Saint Alphonsus Health Sys., Inc. v. Tehum Care Servs., Inc., et al.*, No. 1:23-cv-00065<br>U.S. District Court for the District of Idaho | | YesCare Corp.<br>CHS TX, Inc. | |
| *St. Luke's Health System, Ltd et al v. Corizon, LLC et al.*, No. 1:18-cv-00289-DCN<br>U.S. District Court for the District of Idaho | | YesCare Corp.<br>CHS TX, Inc. | |
| *Nelson v. Corizon LLC*, et al., No. 8:19-cv-449-CEH-JSS<br>U.S. District Court for the Middle District of Florida | Florida Department of Corrections | | |
| *Hasty v. Corizon LLC et al.*, No. 2:22-cv-04054-SRB<br>U.S. District Court for the Western District of Missouri | | YesCare Corp.<br>CHS TX, Inc. | |
| *Kelly v. Corizon Health Inc. et al.*, No. 2:22-cv-10589-MAG-DRG<br>U.S. District Court for the Eastern District of Michigan | | YesCare Corp.<br>CHS TX, Inc. | |